UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
ANGELA GLIKIN, individually and on behalf
of all others similarly situated,
               Plaintiff,

v.

MAJOR ENERGY ELECTRIC SERVICES, LLC,
               Defendant.
--------------------------------------------------------------x

**OPINION AND ORDER**

21 CV 356 (VB)

Briccetti, J.:

      Plaintiff Angela Glikin brings this putative class action against defendant Major Energy Electric Services, LLC, alleging defendant, an independent energy service company, deceived its customers and overcharged them for electricity.

      Now pending is defendant's motion to stay this action in favor of arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, or, in the alternative, to transfer the action to the United States District Court for the District of Maryland. (Doc. #20).[1]

      For the following reasons, the motion to stay is DENIED, and the motion to transfer is GRANTED.

---

[1] Defendant does not seek to compel arbitration pursuant to Section 4 of the FAA. (Doc. #21, at 9 n.6). However, "[t]he power to grant a stay under § 3 [of the FAA] is in no way conditioned upon the existence of power to compel arbitration in accordance with § 4." Tepper Realty Co. v. Mosaic Tile Co., 259 F. Supp. 688, 692 (S.D.N.Y. 1966); see, e.g., Nat'l City Golf Fin. v. Higher Ground Country Club Mgmt. Co., 641 F. Supp. 2d 196, 201–02 (S.D.N.Y. 2009).

1

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).[2]

## BACKGROUND

Plaintiff resides in Maryland. She alleges that in late 2013 she became a customer of Entrust Energy, an independent energy service company. Plaintiff's agreement with Entrust Energy provided that Entrust Energy would supply plaintiff's residence with electricity at a fixed rate during the initial term of the agreement.

The Entrust Energy contract further provided that, at least forty-five days prior to the end of the initial term, Entrust Energy would provide plaintiff with a renewal notice. If plaintiff did not respond to the renewal notice, the agreement would convert to a variable-rate plan, which would in turn automatically renew every month. Under a variable-rate plan, "[t]he rate per kWh may be adjusted monthly to reflect market conditions, including market pricing of commodity, transportation, profit, and other market price factors." (Doc. #1 ("Compl.") Ex. A at ECF 3).[3]

In addition, Entrust Energy promised to provide plaintiff "with 30 days advance written notice of any material change to the Agreement, and such changes will become effective as indicated unless [plaintiff] notifies Entrust Energy that [she] wishes to terminate the agreement." (Compl. Ex. A at ECF 3).

---

[2]    The Class Action Fairness Act ("CAFA") confers subject matter jurisdiction over certain class actions with an amount in controversy of at least $5 million, when the class exceeds 100 individuals, and the parties are minimally diverse. 28 U.S.C. § 1332(d). Because the Court presumes plaintiff's complaint sets forth good-faith representations of the amounts in controversy, and because defendant does not argue there is a legal certainty that the amounts recoverable are less than $5 million, the Court resolves any doubt in favor of plaintiff and finds subject matter jurisdiction under CAFA is adequately alleged at this stage of the case. See, e.g., Cosgrove v. Or. Chai, Inc., 520 F. Supp. 3d 562, 573–74 (S.D.N.Y. 2021).

[3]    "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

The Entrust Energy contract further provided that "[v]enue for any lawsuit brought to enforce any term or condition of this Agreement or to construe the terms hereof shall lie exclusively in the State of Maryland." (Compl. Ex. A at ECF 4). The contract purportedly did not include a mandatory arbitration clause or a class action waiver.

According to plaintiff, Entrust Energy assigned her contract to National Gas & Electric, LLC ("NG&E"), in 2016. NG&E informed plaintiff of the assignment by letter dated May 6, 2016, which stated there would "be no changes to the terms and conditions" of her agreement with Entrust Energy and that NG&E would honor those terms and conditions "through the life of" the agreement. (Compl. Ex. B at ECF 2).

Defendant contends NG&E mailed plaintiff a letter dated July 21, 2016, to her home address. According to defendant, the letter stated plaintiff's contract would expire on September 7, 2016, and informed plaintiff she could (i) choose a new electricity rate online; (ii) select a new electricity plan by phone; or (iii) "Do Nothing! How great is that?", in which case her electricity plan would automatically convert to a month-to-month variable-rate plan. (Doc. #21-1 ("Konikowski Decl.") Ex. 2 at ECF 10). The July 21 letter purportedly attached a "Disclosure Statement and Terms of Service," which included the following mandatory arbitration and class action waiver clauses:

> **11. Mandatory Arbitration**. Any claim, dispute or controversy, regarding any contract, tort, statute, or otherwise ("Claim"), arising out of or relating to this agreement or the relationships among the parties hereto shall be resolved by one arbitrator through binding arbitration administered by the American Arbitration Association ("AAA") . . . . The arbitrator's decision shall be final, binding, and non-appealable. Judgment upon the award may be entered and enforced in any court having jurisdiction. This clause is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act. Neither party shall sue the other party other than as provided herein for enforcement of this clause or of the arbitrator's award; any such suit may be brought only in Federal District Court for the district in which you are located, or if any such court lacks jurisdiction, in any state court that has jurisdiction. The

arbitrator, and not any federal, state or local court, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, unconscionability, arbitrability, enforceability or formation of this Agreement including any claim that all or any part of the Agreement is void or voidable. However, the preceding sentence shall not apply to actions contemplated in Paragraph 12 entitled Class Action Waiver" below.

**12. Class Action Waiver**. Any Claim permissible herein must be brought in the party's individual capacity, and not as a plaintiff or class member in any purported class, collective, representative, multiple plaintiff, or similar proceeding ("Class Action"). Each of the parties expressly waives any ability to maintain any Class Action in any forum. The arbitrator shall not have authority to combine or aggregate similar claims or conduct any Class Action nor make an award to any entity or person not a party to the arbitration. Any claim that all or part of this Class Action Waiver is unenforceable, unconscionable, void, or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator. THE PARTIES UNDERSTAND THAT THEY WOULD HAVE HAD A RIGHT TO LITIGATE THROUGH A COURT, TO HAVE A JUDGE OR JURY DECIDE THEIR CASE INDIVDUALLY OR TO BE PARTY TO A CLASS OR REPRESENTATIVE ACTION, HOWEVER, THEY UNDERSTAND AND CHOOSE TO HAVE ANY CLAIMS DECIDED INDIVIDUALLY THROUGH ARBITRATION.

(Id. Ex. 2, §§ 11, 12).

Plaintiff asserts she never received the NG&E July 21, 2016, letter and she was never otherwise informed her agreement with NG&E included a mandatory arbitration term or a class action waiver.

In or around October 2016, plaintiff alleges her fixed-rate plan ended and her account converted to a variable-rate plan, which in turn began to renew automatically every month.

NG&E allegedly assigned plaintiff's agreement to defendant in April 2018. Defendant informed plaintiff of the assignment by letter dated March 14, 2018, which stated there would "be no changes to the terms or conditions" of her current agreement and that defendant would honor the terms of her agreement with NG&E "through the life of" the agreement. (Compl. Ex. C at ECF 2).

Plaintiff commenced this putative class action on January 14, 2021, on behalf of all of defendant's customers who were "charged a variable rate for electricity or gas . . . during the applicable statute of limitations period." (Compl. ¶ 155(a)). She contends the variable rates offered by defendant were consistently and significantly higher than the rates charged by public utilities despite being advertised as "competitive," and she asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, violations of New York and Maryland consumer-protection statutes, unfair and deceptive acts and practices, fraud by concealment, and unjust enrichment.

## DISCUSSION

I.  Motion to Stay in Favor of Arbitration

Plaintiff contends the motion to stay this action in favor of arbitration must be denied because defendant has not demonstrated the existence of a valid arbitration agreement.

The Court agrees.

A.  Legal Standard

Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  In other words, the Court must stay any case if it determines the underlying dispute is subject to arbitration pursuant to a valid arbitration agreement and the party seeking the stay is not in default in the arbitration.  Katz v. Cellco P'ship, 794 F.3d 341, 345–46 (2d Cir. 2015).[4]

"[P]arties may not delegate to the arbitrator the fundamental question of whether they formed the agreement to arbitrate in the first place."  Doctor's Assocs., Inc. v. Alemayehu, 934 F.3d 245, 251 (2d Cir. 2019).

In determining whether the parties agreed to arbitrate, federal courts "apply ordinary state-law principles that govern the formation of contracts."  First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995).  In making this determination, courts "appl[y] a standard similar to that applicable for a motion for summary judgment."  Cf. Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003) ("[T]he summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability, regardless of whether the relief sought is an order to compel arbitration or to prevent arbitration.").  That is, courts may "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," and "must draw all reasonable inferences in favor of the non-moving party."  Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016).

Ultimately, "[t]he burden is upon the party seeking a stay to satisfy the court that a matter is referrable to arbitration."  Miletic v. Holm & Wonsild, 294 F. Supp. 772, 774 (S.D.N.Y. 1968).

---

[4]   Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

B.     Analysis

Defendant has not met its burden to demonstrate an arbitration agreement was made and thus has not satisfied the Court that the matter is referrable to arbitration.

Under Maryland law,[5] "[a]rbitration is a matter of contract which the parties should be allowed to conduct in accordance with their agreement." Gold Coast Mall, Inc. v. Larmar Corp., 298 Md. 96, 103 (1983). "A party cannot be required to submit any dispute to arbitration that it has not agreed to submit." Id.

"Creation of a contract requires an offer by one party and acceptance by the other party." Cochran v. Norkunas, 398 Md. 1, 23 (2007). Further, "[i]t is universally accepted that a manifestation of mutual assent is an essential prerequisite to the creation or formation of a contract." Id. at 14. A "[m]anifestation of mutual assent includes two issues: (1) intent to be bound, and (2) definiteness of terms." Id.

"[P]arties to a contract may agree to vary its terms and enter into a new contract embodying the changes agreed upon." Cole v. Wilbanks, 226 Md. 34, 38 (1961). "[M]utual assent is as much a requisite element in effecting a contractual modification as it is in the initial creation of a contract." Keco Indus., Inc. v. ACF Indus., Inc., 316 F.2d 513, 516 (4th Cir. 1963) (applying Maryland law); accord Geppi v. Pineau, 2021 WL 3046846, at *5 (Md. Ct. Spec. App.

---

[5]     The parties agree, and the Court concludes, that Maryland law applies. In a diversity case, the Court must apply the choice-of-law rules of the forum state to determine which state's substantive law should be applied. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Under New York choice-of-law rules, and absent fraud or a violation of a fundamental state policy, choice-of-law provisions will be honored "as long as the state selected has sufficient contacts with the transaction." Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd., 230 F.3d 549, 556 (2d Cir. 2000). Both plaintiff's agreement with Entrust Energy (Compl. Ex. A at ECF 4) and the Disclosure Statement and Terms of Service purportedly mailed by NG&E to plaintiff include Maryland choice-of-law provisions. (Konikowski Decl. Ex. 2, § 13(c)). Moreover, plaintiff resides in Maryland and received defendant's services in Maryland. As a result, the Court applies Maryland law to interpret the agreement between the parties.

July 20, 2021) ("To modify a contract, both parties must assent to a particular change."). Further, "where a party voluntarily included a notice of changes provision in a customer agreement it authored and had unilateral authority to amend," that party must comply with such provision for the modification to take effect. DIRECTV, Inc. v. Mattingly, 376 Md. 302, 319–20 (2003); see also, e.g., Patuxent Tech. Partners, LLC v. Verizon Network Integration Corp., 2003 WL 23498497, at *7 (Md. Cir. Ct. Dec. 10, 2003) (compelling arbitration when, although plaintiff contended the arbitration agreement was subsequently amended orally to limit the applicability of the arbitration clause, the agreement provided for written modifications only).

Defendant has not demonstrated NG&E complied with the notice-of-changes provision in its contract with plaintiff, and as a result, it has not satisfied the Court its agreement with plaintiff was modified to include an arbitration clause.

In DIRECTV, Inc. v. Mattingly, the Maryland Court of Appeals affirmed the intermediate court decision that a customer's dispute with his satellite cable provider should not be dismissed in favor of arbitration. In that case, the plaintiff's initial customer agreement provided:

> DIRECTV reserves the right to change these terms and conditions, including the Applicable Fees and Charges. <u>If any changes are made, we will send you a written notice describing the change and its effective date</u>. If a change is not acceptable to you, you may cancel your service. If you do not cancel your service, your continued receipt of any service is considered to be your acceptance of that change.

376 Md. at 306 (emphasis added). However, the satellite provider subsequently mailed a second proposed customer agreement with "unhighlighted and otherwise undescribed changes," one of which was an arbitration clause. Id. at 307. Drawing from dictionary definitions of "notice" and "describe," the court found the second proposed customer agreement could not be given effect because the customer "could not have constructively assented to the arbitration provision"

8

because he "was not given proper notice of the changes to his initial customer agreement." Id. at 315–17.

Here, plaintiff's agreement with Entrust Energy stated Entrust Energy was to provide plaintiff "with 30 days advance written notice of any material change to the Agreement, and such changes will become effective as indicated unless [plaintiff] notifies Entrust Energy that [she] wishes to terminate the agreement." (Compl. Ex. A at ECF 3 (emphasis added)). This contract was assumed by NG&E.

Putting aside whether it was sent or received, NG&E's July 21, 2016, letter to plaintiff attaching the Disclosure Statement and Terms of Service is insufficient "advance written notice" of the multiple proposed "material change[s]" to its agreement with plaintiff.

Unlike the defendant in DIRECTV, Inc. v. Mattingly, NG&E was not obligated to "describ[e]" any proposed modifications to its agreement with plaintiff. However, NG&E was obligated to provide "advance written notice of any material change," which means it needed to "provide, in writing, information or a warning . . . of the content of the new modifications to the agreement that was different from what the initial customer agreement stated, or what it would be if the initial customer agreement was left alone" before the agreement could be modified. 376 Md. at 315–16.

NG&E's July 21, 2016, letter did not inform or warn plaintiff of any changes to her agreement with Entrust Energy. To the contrary, the letter informed plaintiff she could "Do Nothing! How great is that?", and, if she did so, her "account would automatically renew on a month to month variable rate plan with no cancellation fee!" (Konikowski Decl. Ex. 2 at ECF 10). Moreover, NG&E had separately advised plaintiff it would honor her existing agreement with Entrust Energy and there would "be no changes to the terms or conditions" of that

9

agreement.  (Compl. Ex. B at ECF 2 ("National Gas & Electric will honor your current agreement in place with Entrust and there will be no changes to the terms or conditions through the life of your current contract."), ECF 3 ("National Gas & Electric will honor your current agreements with Entrust, so no changes will occur with their terms or conditions until the contract end date.").  Accordingly, the July 21, 2016, letter cannot be considered a valid modification to the Entrust Energy contract.  See, e.g., Expo Props., LLC v. Experient, Inc., 956 F.3d 217, 224–25 (4th Cir. 2020) ("[T]he Estoppel Certificate does not label itself as an amendment to the Lease.  It also does not describe how it modifies any obligation under the Lease.  It neither inserts language nor deletes language.  Nowhere does it state that it eliminates any cost-sharing provisions of the Lease. . . .  This Estoppel Certificate did not satisfy the requirements of Maryland contract law for modification of a contract.  Therefore, it did not modify the Lease under Maryland law.").

In short, defendant has not demonstrated an agreement to arbitrate was made.  As such, its motion to stay in favor of arbitration must be denied.

II.     Motion to Transfer Venue

In the alternative, defendant contends this case should be transferred to the District of Maryland pursuant to 28 U.S.C. § 1404(a).

The Court agrees.

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "District courts have broad discretion in making determinations of convenience under Section

1404(a) and notions of convenience and fairness are considered on a case-by-case basis." D. H. Blair & Co. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006).

In determining whether transfer is appropriate, courts ordinarily consider the following factors:

> (1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the availability of process to compel the attendance of the unwilling witnesses; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded to the plaintiff's choice of forum; (9) trial efficiency; and (10) the interest of justice, based on the totality of circumstances.

Keitt v. New York City, 882 F. Supp. 2d 412, 458–59 (S.D.N.Y. 2011).

However, "[t]he calculus changes . . . when the parties' contract contains a valid forum-selection clause." Atl. Marine Constr. Co. v. U.S. Dist. Ct., 571 U.S. 49, 63 (2013). For one, the burden shifts to the party opposing transfer pursuant to a valid forum-selection clause to "establish[ ] that transfer to the forum for which the parties bargained is unwarranted." Id. For another, "the plaintiff's choice of forum merits no weight," nor do "private-interest factors" such as the convenience of the parties or their witnesses. Id. at 63–64. Instead, courts look to "public-interest factors" such as "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." Id. at 62 n.6. "[I]n all but the most unusual cases, . . . the interest of justice is served by holding parties to their bargain." Id. at 66.

The parties are bound by a mandatory Maryland forum-selection clause. (See Compl. Ex. A at ECF 4). Plaintiff has not satisfied her burden to show the forum-selection clause should not be honored in this case.

Indeed, plaintiff's sole argument against transfer is that defendant will suffer no prejudice litigating this case in in New York because it is based in New York and supposedly possesses "the home field advantage" here. (Doc. #30, at 24). But she does not identify any public-interest factors that would defeat the valid forum-selection clause. See, e.g., Encompass Aviation, LLC v. Surf Air Inc., 2018 WL 6713138, at *10 (S.D.N.Y. Nov. 30, 2018) (valid forum selection clause honored when no public interest factors—such as legitimate administrative concerns or the agreed-upon venue's unfamiliarity with the law or that the non-agreed-upon venue had any local interest in resolving the case—warranted disregarding the parties' agreement).

Accordingly, defendant's motion to transfer venue must be granted.

## CONCLUSION

The motion to compel arbitration is DENIED.

The motion to transfer venue is GRANTED.

The Clerk is instructed to transfer this action to the United States District Court for the District of Maryland.

The Clerk is further instructed to terminate the motion. (Doc. #20).

Dated: December 13, 2021
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

12