**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| ANGELA GLIKIN, on behalf of herself and all others similarly situated, | * | |
| | * | |
| | * | |
| | * | |
| Plaintiff | * | |
| | * | Civ. No. MJM-21-3251 |
| v. | * | |
| | * | |
| MAJOR ENERGY ELECTRIC SERVICES, LLC, | * | |
| | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Angela Glikin ("Plaintiff") brings this putative class action against Major Energy Electric Services, LLC ("Defendant"), alleging breach of contract and unjust enrichment. Pending before the Court are Defendant's Motion to Dismiss the Amended Complaint and Plaintiff's Motion for Leave to File Surreply ("Motion to File Surreply"). The motions are ripe for disposition, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons stated herein, Plaintiff's motion shall be denied, and Defendant's motion, construed as a motion to stay these proceedings, shall be granted.

## I. FACTUAL BACKGROUND[1]

Historically, Maryland residents had their electricity and natural gas utilities supplied by regulated entities like Baltimore Gas and Electric ("BGE"). Am. Compl. ¶ 2. In 1999, however, Maryland passed the Electric Customer Choice and Competition Act, which deregulated the

---

[1] The facts outlined in Part I are drawn from the Amended Complaint and documents attached to, or referenced in, the Amended Complaint. *See* ECF 73.

utilities market and allowed customers to purchase their electricity from licensed independent energy service companies ("ESCOs") in addition to their state and local utility companies. *Id.* ¶ 41. Defendant is one such ESCO and acts as a "middleman" between the energy producer and the end-user customer, buying energy and reselling it to customers. *Id.* ¶¶ 1, 42. There is no difference in the electricity that ESCOs provide compared with state-regulated utility companies—the only difference is price. *Id.* ¶ 6. Plaintiff alleges that a local utility company's rates, like BGE's, for the supply of electricity thus "serves as an ideal indicator of market conditions." *Id.* ¶¶ 85, 100.

In 2013, Plaintiff, a Maryland resident, enrolled with Entrust Energy ("Entrust"), an ESCO, to receive electricity at a fixed rate of 9.5¢ per kWh (kilowatt-hour). *Id.* ¶ 82; ECF 73-1. Her agreement with Entrust provided that the plan would eventually go from a fixed rate to a month-to-month variable rate unless she responded to a notice sent 45 days before the change went into effect. Am. Compl. ¶ 83; ECF 73-1. The variable rate was calculated as follows: "The rate per kWh may be adjusted monthly to reflect market conditions, including market pricing of commodity, transportation, profit, and other market price factors." Am. Compl. ¶ 84; ECF 73-1. Plaintiff alleges, on information and belief, that this provision was the same for all of Defendant's customers. Am. Compl. ¶ 84.

In May 2016, Plaintiff received a letter, informing her that Entrust had assigned her electricity supply contract to National Gas and Electric ("NGE"). *Id.* ¶ 86; ECF 73-2. In March 2018, Plaintiff received another letter, informing her that NGE would soon assign her electricity supply contract to Defendant. Am. Compl. ¶ 87; ECF 73-3. The letter explained that Defendant would honor Plaintiff's prior agreement with NGE and that the variable rate calculation would remain the same. Am. Compl. ¶¶ 88–90. Plaintiff's contract with NGE was assigned to Defendant in April 2018. *Id.* ¶ 91. Plaintiff alleges that Defendant, despite ensuring that it would provide

competitive prices,[2] immediately began to "price gouge" her. *Id.* ¶¶ 89–91, 93. In January 2020, Plaintiff realized her electric utility rates with Defendant were significantly higher than what BGE, her local utility, was charging, and she cancelled her service with Defendant. *Id.* ¶ 92. Specifically, for the 21 months that Defendant supplied electricity to Plaintiff, its rates were on average 151% higher than BGE's rates. *Id.* ¶¶ 97–98. Plaintiff argues that a reasonable customer would interpret the statement regarding competitive prices to refer to the market rate and that the rates Defendant charged could not possibly be described as competitive. *Id.* ¶¶ 94–96, 99.

Not only were Defendant's rates consistently higher than BGE's, but they were also higher than those of other ESCOs. *Id.* ¶¶ 111–16. Of the 54 ESCOs that operated in Maryland in 2018, Defendant's rates were the second highest. *Id.* ¶ 113. Defendant's rates were higher than the average rates of its competitor ESCOs every year in Maryland from 2002 through 2019. *Id.* ¶ 112. Defendant's rates also rarely reflected the wholesale market price of electricity; even when the supply costs of electricity decreased, Defendant's rates would frequently increase. *Id.* ¶¶ 118–21, 135. Plaintiff contends that Defendant's conduct was contrary to what a reasonable customer would have expected from an electricity supplier that promised competitive prices. ¶¶ 117, 122–23, 136.

According to the Amended Complaint, Plaintiff and other customers of Defendant were induced to purchase its energy supply services by Defendant's representation that its prices would be competitive and would reflect market conditions. *Id.* ¶ 131. Defendant knew it could charge exorbitant rates because customers would not know such rates were out of line with Defendant's competitors. *Id.* ¶¶ 132–34. According to Plaintiff, no interpretation of the phrase "market

---

[2] According to the March 2018 letter, "The Major Energy team's experience in deregulated energy markets enables them to offer competitive prices . . . ." ECF 73-3. Defendant disputes that this statement constitutes a promise or obligation of any kind. ECF 78-1 at 9.

conditions" could explain or justify the rates that Defendant charged for supplying electricity. *Id.* ¶¶ 140–45. Accordingly, Plaintiff alleges, no reasonable customer with adequate knowledge of Defendant's rates relative to the market would have chosen to contract with Defendant. *Id.* ¶¶ 139, 142.

Plaintiff sues on behalf of a putative class of Defendant's customers for Defendant's "standardized and uniform" conduct. *Id.* ¶¶ 146–47. The class is comprised of multi-state and state-specific subclasses. *Id.* ¶ 148.

## II.    PROCEDURAL BACKGROUND

On January 14, 2021, Plaintiff filed her initial Complaint in the District Court for the Southern District of New York, asserting claims for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), violations of New York Business Law (Counts III & IV), unfair and deceptive practices (Count V), violation of the Maryland Consumer Protection Act (Count VI), fraud by concealment (Count VII), and unjust enrichment (Count VIII). ECF 1. The case was transferred to this Court on December 12, 2021. ECF 42. Plaintiff filed an Amended Complaint on October 17, 2023, dropping all claims except for breach of contract (Count I)[3] and unjust enrichment (Count II). Am. Compl., ECF 73.

Defendant filed a notice of intent to file a motion to dismiss on October 31, 2023, ECF 76, for which the Court set a briefing schedule on November 8, 2023. ECF 77. On November 28, 2023, Defendant filed its Motion to Dismiss. ECF 78. Plaintiff filed her response in opposition to Defendant's motion, ECF 79, and Defendant filed its reply in support of the motion, ECF 82.

---

[3]      Plaintiff does not forgo her breach of the implied covenant of good faith and fair dealing claim in her Amended Complaint but rather combines it with her breach of contract claim into a single count. *See* Am. Compl. ¶¶ 4, 167–71.

Plaintiff then filed a Motion for Leave to File Surreply. ECF 83 Defendant filed its response in opposition to Plaintiff's motion, ECF 84, and Plaintiff filed a reply, ECF 85.

### III.    PLAINTIFF'S MOTION FOR LEAVE TO FILE SURREPLY

#### A.  Standard of Review

"Surreplies are highly disfavored in this District." *Roach v. Navient Sols., Inc.*, 165 F. Supp. 3d 343, 351 (D. Md. 2015). Surreplies are not permitted unless so ordered by the court, pursuant to Local Rule 105.2(a), and should only be allowed when the "moving party would otherwise be unable to contest matters presented to the court for the first time in the opposing party's reply." *Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 550 (D. Md. 2021) (citing *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004)); *see also Meyer v. DynCorp Int'l, LLC*, Civ. No. GJH-19-3412, 2020 WL 5513436, at *3 (D. Md. Sept. 14, 2020) (denying motion for leave to file surreply where the reply "did not raise new issues that could not have been anticipated beforehand, and instead merely provided additional legal authority and development of its prior arguments[]"). "A party moving for leave to file a surreply must show a need for a surreply." *MTB Servs., Inc. v. Tuckman–Barbee Constr. Co.*, Civ. No. RDB-12–2109, 2013 WL 1224484, at *6 (D. Md. Mar. 26, 2013) (citing Local Rule 105.2(a)).

#### B.  Discussion

Plaintiff argues that the Court should consider its proposed surreply because Defendant raised several new arguments in its reply brief:

> 1. Though Plaintiff only brings claims for breach of contract and unjust enrichment, that her claims "involve allegations of abusive, bad-faith, deceptive, and misleading conduct";
>
> 2. That the need for exhaustion does not require the [Maryland Public Service Commission ("PSC")] to provide Plaintiff with a "comprehensive" remedy;

3. That the Amended Complaint is "replete with allegations that Major engaged in fraud, deceptive practices, and abuse and bad faith conduct";

4. That Plaintiff's reference to other state regulatory agencies indicates that the PSC has primary jurisdiction over the instant matter; and

5. That Defendant in its reply cited to *Martinez v. Agway Energy Services, LLC*, 88 F.4th 401 (2d Cir. 2023), an opinion that was filed while the parties were briefing.

ECF 83 at 3–4.[4]

Defendant in turn contends that Plaintiff's proposed surreply should be denied because (1) it is untimely and (2) Defendant did not raise new arguments in its reply brief. ECF 84 at 5–6.

The Court agrees with Defendant that the arguments raised in its reply brief were not new, but rather were responsive to arguments that Plaintiff had made in her opposition.

Defendant argues in its reply brief that the PSC has primary jurisdiction over Plaintiff's claims because the Amended Complaint involves allegations of bad-faith, deceptive, fraudulent, and misleading conduct. ECF 82 at 6. This argument was not new but was made in response to Plaintiff's contention that the PSC lacked jurisdiction over her "garden variety contract and quasi-contract claims." ECF 79 at 9. Though this is not a point made in Defendant's opening brief, "Defendant did not deliberately hold arguments back from its original motion in an attempt to spring them on [Plaintiff] when a response could no longer be made; it merely argued against those points that [Plaintiff] asserted in [her] opposition." *E.E.O.C. v. Freeman*, 961 F. Supp. 2d 783, 802 (D. Md. 2013).

Defendant's next argument—that Plaintiff must still exhaust her remedies even if the PSC cannot provide her with a comprehensive remedy—was a direct response to Plaintiff's assertion

---

[4]     The Court considers Plaintiff's first and third arguments in support of its need for a surreply to be functionally identical and need not address them separately.

that the PSC lacks jurisdiction because it cannot provide a comprehensive remedy. *See* ECF 79 at 6–8; ECF 82 at 5. It is not a new argument.

Similarly, Defendant's discussion of other states' regulatory agency decisions and commentary on matters involving Defendant is not a new argument but rather is a response to Plaintiff's contention that the PSC lacked special expertise on the instant matter. *See* ECF 79 at 10; ECF 82 at 7.

Finally, even if Defendant's analysis of the *Martinez* case in its reply brief constituted a new argument, it would not warrant granting Plaintiff's Motion to File Surreply. *Martinez* is not necessary for determination of the issues at hand. The Court will simply disregard it.

Plaintiff's Motion to File Surreply (ECF 83) is thus denied, and the proposed surreply (ECF 83-2) shall not be considered.[5]

## IV.    DEFENDANT'S MOTION TO DISMISS

### A.  Standard of Review

A defendant may challenge a court's subject matter jurisdiction of a case by filing a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure. The plaintiff bears the burden of proving that the court indeed has jurisdiction over the matter. *Demetres v. E.W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015) (citing *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999)). When subject matter jurisdiction is at issue, "the court is to regard the pleadings 'as mere evidence on the issue, and may consider evidence outside the pleadings . . . .'" *Burns v. Wash. Metro. Area Transit Auth.*, 488 F. Supp. 3d 210, 213 (D. Md. 2020) (quoting *Evans*, 166 F.3d at 647)). This review must be done without the court "drawing from the pleadings inferences

---

[5]    Because the Court finds that Defendant did not raise new arguments in its reply brief, it is not necessary to decide whether Plaintiff's Motion to File Surreply was untimely.

favorable to the party asserting [jurisdiction]." *Sac & Fox Nation of Okla. v. Cuomo*, 193 F.3d 1162, 1168 (10th Cir. 1999) (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)); *see also Norton v. Larney*, 266 U.S. 511, 515–16 (1925) ("[T]he jurisdiction of a federal court must affirmatively and distinctly appear and cannot be helped by presumptions or by argumentative inferences drawn from the pleadings."). Motions to dismiss based upon a failure to pursue and exhaust administrative remedies is governed by this standard when that failure deprives the court of jurisdiction. *See McCoy v. Pepco Holdings, Inc.*, Civ. No. GJH-15-2487, 2016 WL 8678000, at *2 (D. Md. June 10, 2016) (citation omitted).

### B. Discussion

Defendant argues this action should be dismissed because Plaintiff failed to exhaust her administrative remedies under Maryland law by failing to pursue her claims with the Maryland Public Service Commission ("PSC"). ECF 78-1 at 10–11. Plaintiff argues that the PSC lacks primary jurisdiction over her claims because it cannot provide a comprehensive remedy for breach of contract and unjust enrichment claims, is not charged with regulating such injuries, and its expertise is not needed to adjudicate her common law claims. ECF 79 at 6–11. The Court agrees with Defendant and finds that PSC has primary jurisdiction over the claims asserted in this action.

Under the Maryland Public Utilities Article, the PSC has jurisdiction to regulate public service companies that operate in Maryland. Md. Code Ann., Pub. Util. § 2-112. Public service companies include electric companies and suppliers of electricity. *Id.* §§ 1-101(l), (z)(1).

When "the Legislature provides an administrative and judicial review remedy for a particular matter or matters, the relationship between that administrative remedy and a possible alternative judicial remedy will ordinarily fall into one of three categories[:]" exclusive, primary, or concurrent. *Zappone v. Liberty Life Ins. Co.*, 706 A.2d 1060, 1067–68 (Md. 1998). Where an

administrative agency's jurisdiction is exclusive, a claimant may not go to the courts for redress. *Id.* at 1067. Where an agency's jurisdiction is primary but not exclusive, the claimant must first exhaust her remedies with the agency, and only after an adverse administrative decision may she seek redress with the courts. *Id.* at 1067–68 (citations omitted). And where an agency's jurisdiction is concurrent with the courts', the claimant may choose which of the two remedies to pursue. *Id.* at 1068 (citations omitted).

Courts look to statutory language and legislative history to determine whether an administrative agency's jurisdiction is meant to be exclusive, primary, or concurrent, but where those tools provide no answer, there is a presumption that the agency's jurisdiction is primary. *Id.* at 1069 (citing cases). The presumption in favor of primary jurisdiction is a rebuttable one, and the factors to be considered are the comprehensiveness of the administrative scheme, the agency's view of its own jurisdiction, and whether the judicial cause of action would be dependent on the agency's expertise. *Id.* at 1069–70.

The Maryland Court of Appeals (now Maryland Supreme Court), after engaging in a detailed *Zappone* analysis, held that "[t]he design of the Public Utility Companies Article does not reflect an intent to abrogate common law causes of action brought by consumers of the services offered by public service companies. Rather, the [PSC] was designed to regulate the provision of services to consumers in specific arenas." *Bell Atl. of Md., Inc. v. Intercom Sys. Corp.*, 782 A.2d 791, 796–804 (Md. 2001). These specific arenas, where the PSC accordingly has primary jurisdiction, are areas for which the Maryland Public Utilities Article has set forth a specific regulatory process. *See id.* When bringing a claim in such an area, "a claimant must [first] invoke and exhaust the administrative remedy [of the PSC], and seek judicial review of an adverse administrative decision, before a court can properly adjudicate the merits of the alternative judicial

remedy." *Id.* at 797; *see also McCoy*, 2016 WL 8678000, at *3. The exhaustion doctrine applies "where a matter involves those areas within the jurisdiction of the [PSC], either in whole or in part." *Todd v. XOOM Energy Md., LLC*, Civ. No. GJH-15-154, 2020 WL 1552769, at *6 (D. Md. Mar. 31, 2020) (quoting *Bell Atl.*, 782 A.2d at 806).

The PSC, for "just cause on the [PSC's] own investigation or on complaint of . . . an affected party," may impose civil penalties against a supplier of electricity. Md. Code Ann., Pub. Util. § 7-507(k)(1). Just cause includes where the electricity supplier is "(iv) committing fraud or engaging in deceptive practices; . . . (vi) violating a Commission regulation or order; . . . [or] (viii) violating a provision of this article or any other applicable consumer protection law of the State[.]" *Id.* § 7-507(k)(3). Indeed, "claims against electricity suppliers for . . . engaging in fraudulent or deceptive conduct are plainly within the Commission's jurisdiction." *Todd*, 2020 WL 1552769, at *6.[6]

Here, although Plaintiff has abandoned her original claims of fraud and removed from her Amended Complaint many of her prior allegations that Defendant's actions were fraudulent and deceptive, *see* ECF 75, her remaining claims for breach of contract and unjust enrichment are still based on the same alleged conduct, which the Amended Complaint describes as bad faith, *see* Am. Compl. ¶¶ 1, 3, 5, 11, 16, 81, 116, 130, 137, 142, 145. Black's Law Dictionary defines bad faith as "[d]ishonesty of belief, purpose, or motive" *Bad Faith,* BLACK'S LAW DICTIONARY (12th ed. 2024); *see also Bad Faith,* NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010) ("Intent to deceive"); *cf. Good Faith,* BLACK'S LAW DICTIONARY (12th ed. 2024) ("Absence of intent to

---

[6]     Plaintiff suggests that *Todd* should not be relied upon in part because the Court did not address the PSC's jurisdiction through the *Zappone* factors. *See* ECF 79 at 10. This Court does not agree. The *Todd* decision heavily cites to *Bell Atlantic*, which, as discussed, conducted a thorough *Zappone* analysis of the PSC's jurisdiction. There is no need for the Court in *Todd*, nor for the Court here, to engage in duplicative analysis.

defraud . . ."). Using the term "bad faith" rather than "deceptive" or "fraudulent" does not permit an end-run around the PSC's primary jurisdiction.

To borrow from the *Bell Atlantic* court:

> Intercom's complaint filed in its independent judicial action, as well as its complaints before the [PSC], set forth common law causes of action arising out of Bell Atlantic's conduct in handling Intercom's business. *However, many of the factual predicates upon which Intercom rests its claims are also issues which fall within the regulatory scheme established in the Public Utility Companies Article.* For example, Intercom's claims concerning the functionality of the circuits provided by Bell Atlantic, billing rates[7], and discriminatory pricing of service to a consumer are all issues which may be addressed by the [PSC].

782 A.2d at 806 (emphasis added). Although the Amended Complaint solely brings non-fraud common law causes of action, the Court must consider the factual predicates of Plaintiff's claims to determine whether the PSC has primary jurisdiction. Here, the factual predicates of Plaintiff's claims are Defendant's allegedly deceptive and dishonest practices, which puts this case squarely within the PSC's primary jurisdiction. *See* Md. Code Ann., Pub. Util. § 7-507(k)(3)(iv).

Accordingly, the Court finds that Plaintiff's claims are unexhausted and must first be presented to the PSC before the Court may adjudicate them.

However, the Court retains the discretion to stay the instant proceeding, rather than dismiss it outright. *See Carter v. Huntington Title & Escrow, LLC*, 24 A.3d 722, 741 (Md. 2011) (where an administrative agency has primary but not exclusive jurisdiction, a court may choose to stay unexhausted claims) (citing cases). In light of the extensive procedural history of this case dating

---

7      Plaintiff's claims also concern electric utility billing rates, an area squarely within the scope of the PSC's regulatory authority. *See* Md. Code Ann., Pub. Util. § 2-113(a); *McCoy*, 2016 WL 8678000, at *3; *Bell Atl.*, at 806.

back several years, the Court declines to dismiss the instant case and shall instead enter a stay pending a decision by the PSC.[8]

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to File Surreply shall be denied, and Defendant's Motion to Dismiss shall be treated as a motion to stay and be granted.

A separate Order shall follow.

9/18/24
_____
Date

_____
Matthew J. Maddox
United States District Judge

---

[8]    Should Plaintiff fail to pursue administrative relief with the PSC within a reasonable time, however, then the Court will dismiss the instant case for failure to prosecute. Fed. Rule Civ. P. 41(b).